1John Gabor
Kay Gabor
590 Smokey Court
Campbell, CA. 95008-3717
*No telephone calls or threats*
Plaintiffs

RECEIVED
2008 JUN -5 PM 2:21
RICHARD W. WIEKING
CLERK
U.S. DSTRICT COURT
NO. DIST. OF CA S.J

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| **JOHN GABOR and KAY GABOR,**<br><br>Plaintiffs,<br><br>UNITED STATES OF AMERICA, et al.,<br>Defendants, | CASE NO. **5:07-cv-06091-RMW**<br><br>**PLAINTIFFS REPLY IN OPPOSITION TO RICO DEFENDANT SOLOMON MOTION 12(b)(6) AND FOR UNLAWFUL AWARD OF PREJURY TRIAL ATTORNEY FEES dkt 9 TO PLAINTIFF'S FIDUCIARY ATTORNEY CCC § 52.1** |

TO THE UNITED STATES DISTRICT COURT JUDGE, *and plaintiff's witness*, WHYTE AND ALL PARTIES, NOT IN DEFAULT:

1. Plaintiffs John and Kay Gabor hereby file this their REPLY IN OPPOSITION TO RICO DEFENDANT SOLOMON MOTION 12(b)(6) AND FOR UNLAWFUL AWARD OF PRE-JURY TRIAL ATTORNEY FEES <u>dkt 9</u> TO PLAINTIFF'S FIDUCIARY ATTORNEY CCC § 52.1.

2. Attorney KAY K. YU SBN 42479 is an employee of the California Attorney General's Office and a "servant to the people of the state of California" under 18 U.S.C. § 666 and prohibited from soliciting fees as an employee of an entity receiving federal funds. The United States Attorney for the Western District of Texas JOHNNY SUTTEN prosecuted former Texas Attorney General Dan Morales and obtained a conviction for soliciting "attorney fees" while performing statutory duties for those he was paid to serve. Attorney Yu is not an employee for the CALIFORNIA EMPLOYEES UNION but an attorney paid to serve citizen plaintiffs Gabor pursuant to California Civil Code § 52.1. Embezzlement of property "for personal use" is a RICO OFFENSE. See headnotes of *Salinas v. United States*, 118 S. Ct. 469 (1997), as follows

**4. Bribery 1(1)**

Federal bribery statute was designed to extend federal bribery prohibitions to bribes offered to state and local officials employed by agencies receiving federal funds. Courts generally must follow plain and unambiguous meaning of statutory language in applying criminal laws. 18 U.S.C. § 666(a)(1)(B).

3. *Defendant Solomon is a RICO DEFENDANT, statutory law prohibits a RICO DEFENDANT*

from recovering attorney fees regardless of any procured re-writing of a single judge in California.

The library in the federal courthouse has a books, often used by former district court judge Aquilar,

judges and attorneys are advised to make use of it, :

*See SMITH\*REED,* **Civil RICO, 1999 Edition, Chapter 1, pages 6-8:**

"Section 1962(d) was also added to the bill, which made it unlawful to conspire to violate any of the provisions of subsections (a), (b) or (c). 19  Finally. Subsection 1962(e) was added, which provided that a violation of section 1962 would continue so long as the person committing the violation continued to receive any benefit from it. 20

So amended, S. 1861 was included as Title IX of S. 30, which passed the Senate on January 23, 1970 as the Organized Crime Control Act of 1970. The vote in the Senate was 73 to 1. 21

The House version of the bill adopted several minor versions, all of which narrowed the scope of the provision. 22 The one House amendment that broadened the scope of RICO was the addition of a **private treble damages remedy** – a change not regarded as especially significant at the time. The early versions of the Senate bill had provided for private treble damages action but that provision was omitted from S. 1861 and S. 30 without explanation.

*In proposing the addition of a private treble damages action* "similar to the private damage remedy found in the anti-trust laws," Representative Steiger asserted that "those who have been wronged by organized crime should at least be given access to a legal remedy. In addition, the availability of such a remedy would enhance the effectiveness of Title IX's prohibitions." 23 The American Bar Association also proposed an amendment "based upon the concept of Section 4 of the Clayton Act." 24 The Committee approved the amendment over the dissent of three of its members, who feared the treble damages provision would be used for malicious harassment of business competitors. 25

---

23.    *Hearings on S. 30, and related proposals, before Subcommittee No. 5 of the House Commmittee on the Judiciary,* 91st Cong., 2nd Sess., 520 (1970) (hereinafter cited as House Hearings), *quoted in* **Sedima, S.P.R.L. v. Imrex Co.,** 473 U.S. 479, 105 S. Ct. 3275, 3280, 87 L. Ed. 2d 346 (1985).

24.    House Hearings, *supra* note 23, at 543-44, 548, 559, *quoted in* **Sedima,** 105 S. Ct. at 3280-81.

25.    **H.R. Rep. No. 91-1549,** 91st **Cong.,** 2nd **Sess. 58, 187 (1970)** *reprinted in* 1970 U.S. Code Cong. & Admin. News 4007, 4081. <u>The full House rejected a proposal to create a complementary treble damages remedy for those injured by being named as defendants in malicious private suits.</u> 116 Cong. Rec. 35342 (1970).

Several other significant amendments were defeated on the House floor or withdrawn. Representative Steiger offered an amendment that would have allowed private injunctive actions, fixed a statute of limitations, and clarified venue and process requirements. 116 Cong. Rec. 35346; *see id.,* at 35226-27. The proposal was greeted with some hostility because it had not been reviewed in Committee, and Steiger withdrew it without a vote. *Id* at 35346-47.

Representative Biaggi offered an amendment that would have made it "unlawful for any person to be a member of a Mafia or La Cosa Nostra organization." *Id.* at 35343. Representative Cellar objected that such terms were "imprecise, uncertain, and unclear" and that mere membership in an organization should not be punishable. *Id.* at 35343-44. Congressman Poff, the bill's sponsor in the House, questioned the constitutionality of the Bliaggi amendment in light of decisions such as **Scales v. United States,** 367 U.S. 203, 81 S. Ct. 1469, 6 L. Ed. 2d 782 (1961), and **Robinson v. California,** 370 U.S. 660. 82 S. Ct. 1417, 8 L. Ed. 2d. 758 (1962). 116 Cong. Rec. at 35344. The amendment was defeated. *Id.* at 35346.

In the 92nd Congress, Senators Hruska and McClellan introduced S, 16, which would have allowed private injunctive actions and suits for damages brought by the federal government, in addition to setting a specific statute of limitations. Although passed by the Senate in 1972 and again in 1973, the House Judiciary Committee took no action on it. Blakey & Gettings, *Racketeer Influenced and Corrupt Organizations (RICO); Basic Concepts – Criminal and Civil Remedies,* 53 Temple L.Q. 1009, 1021 n. 67 (1980).

4. Defendants SOLOMON has NO IMMUNITY as a "coconspirator" since his personal participation in the conspiracy and his liability will be decided by a jury.

5. Filing a MOTION TO DISMISS *preanswer* admits ALL FACTUAL ISSUES IN COMPLAINT and waives all defenses and objection, therefore, regardless of what defendants think they were doing, they are about to be the subject of a television series on corruption.

6. See *Salinas, supra*:

**17. Conspiracy  41**

If conspirators have plan which calls for some conspirators to perpetrate crime and others to provide support, supporters are as guilty as perpetrators.

**18. Conspiracy  28(1)**

It is possible for person to conspire for commission of crime by third person.

**19. Conspiracy  40.2**

Person may be liable for conspiracy even though he was incapable of committing substantive offense.

**20. Conspiracy  24.5**

To be convicted of conspiracy, conspirator must intend to further endeavor which, if completed, would satisfy all of elements of substantive criminal offense, but it suffices that he adopt goal of furthering or facilitating criminal endeavor.

**21. Conspiracy  24(1)**

Conspirator can adopt goal of furthering or facilitating criminal endeavor as required for conspiracy conviction in any number of ways short of agreeing to undertake all of acts necessary for crime's completion.

**22. Conspiracy  24(1)**

One can be conspirator by agreeing to facilitate only some of acts leading to substantive offense.

**23. Conspiracy 28(2)**

Conspiracy may exist and be punished whether or not substantive crime ensues, for conspiracy is distinct evil, dangerous to public, and so punishable in itself.

7.  The California Supreme Court has declared that plaintiff can file a suit in equity for a violation of federally protected constitutional rights, plaintiffs did, and defendant Solomon participated in an obstruction of justice, see *Manta Management Corp. v. City of San Bernardino*, (April 24, 2008) 43 Cal. 4th 400, 75 Cal. Rptr 3d 357, quoting 43 Cal. 4th at 406-407:

## II. DISCUSSION

<u>As relevant here, section 1983 provides that [e]very person who, under color of any ...ordinance ...of any State..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights...secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...</u>

As noted above, "[l]ocal governing bodies... can be sued directly under § 1983 for monetary...relief where... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that bodies officers." (*Monell, supra*, 426 U.S. at p. 590, fn. Omitted.) Section 1983 was enacted to provide compensation " to those deprived of their federal rights by state actors," a category that includes cities and other local governments. (*Felder v. Casey* (1988) 487 U.S. 131,141; see also *Monell, supra*, 436 U.S. at p. 690.) In particular, cities are liable for damages resulting from their actions that cause an infringement of free speech as protected under the First Amendment to the federal Constitution. (See e.g. *Gerritsen V. City of Los Angeles* (9th Cir. 1993) 994 F.2d 570, 575-578, cert. den. (1993) 510 U.S. 915 [city's enforcement of an unconstitutional ordinance restricting handbill distribution supported a § 1983 action for monetary damages].)

" Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." [Citations.]" (*County of Los Angeles v. Superior Court* (1999) 21 Cal 4th 292, 297.) Although section 1983 is silent as to what remedies are available to those suing for a violation of their civil rights, the United States Supreme Court has held that monetary damages are available under that section for actions that have violated federal" constitutional rights and ... have caused compensable injury....' [Citation]" *Carey v. Piphus* (1978) 435 U.S. 247,255, italics omitted.) Thus, a city may be sued for monetary relief under section 1983 if it unconstitutionally implements an ordinance adopted by its officers. "Because section 1983 does not comprehensively dictate the procedures and remedies applicable to actions brought under it, a state court ordinarily applies state law in adjudicating those actions. The supremacy clause of the federal Constitution, however, prohibits a state court from applying state law that is inconsistent with federal law. [Citations.]" *County of Los Angles v. Superior Court, supra*, 21 Cal.4th at p. 298.)

The proper analysis of a section 1983 claim against a municipality requires the examination of two interrelated issues namely, "(1) whether plaintiff's harm was caused by a

[federal] constitutional violation, and (2) if so, whether the city is responsible for that violation." (***Collins v. Harker Heights*** (1992) 503 U.S. 115, 120.) "[T]he fact that a §1983 claimant has demonstrated a violation of [his or] her federally protected rights under color of state law does not necessarily mean that a named defendant will be found liable under § 1983. The liability of a § 1983 defendant depends upon (1) the rules governing culpability and responsibility, including principles of causation and the rule against respondent superior liability; (2) whether individual or governmental liability is at issue; and (3) the available immunities from liability." (**Schwartz, Section 1983 Litigation: Claims and Defenses** (Aspen Pub. 4th ed. 2003) SS 6.01, p. 6-3.) Of the three major issues concerning culpability and responsibility, one is relevant here namely, "[t]he issue of causation: how closely related a defendant's action or inaction must be to the alleged injury...." (***Ibid.***) On the issue of causation. "[f]ederal courts turn to the causation factors developed in the common law of torts to supply the necessary causation factor in the civil rights field." (***Stevenson v. Koskey*** (9th Cir. 1989) 877 F.2d 1435, 1438.)

8. Defendant Solomon's burden is to establish that he is above-the-law and that plaintiffs are not "every person" as defined by the California Supreme Court.

9. Attorney Yu had better be prepared to pay the $5,000.00 per week and the $5,000.00 per day for the excessive cost and delay caused by her and her client.

10. YOU IDIOTS DID NOT CONSIDER THAT PLAINTIFF WILL HAVE AN ATTORNEY AT JURY TRIAL, and you will be facing your own personal indictments by AUSA of the new administration.

11. Your arrogance got you into this and plaintiff thanks you for the evidence and documents so willfully provided and now a part of the record.

### PLAINTIFF MOVES THE COURT TO DENY DEFENDANT'S PREJURY TRIAL MOTION AND SANCTION ATTORNEY YU SHOULD SHE FAIL TO PRODUCE IMMEDIATE CERTIFIED "ABSOLUTE IMMUNITY" DOCUMENTATION FOR HER CLIENT

12. Plaintiff moves the court to deny defendant's perjury trial motion and sanction attorney Yu should she fail to produce immediate certified "absolute immunity" documentation for her client.

13. Expert witness RONALD M. WHYTE will testify that "absolute immunity does not exist" pursuant to the *en banc* Ninth Circuit precedent in ***Beltran v. County of Santa Clara.*** Since witness Ronald M. Whyte has been providing "absolute immunity" to all that write him letters, the Ninth Circuit

and the Commission on Judicial Misconduct will probably have several scheduled hearings before his personal meeting with Associate Justice Breyer and the Inspector General in 2009.

## CERTIFICATION

14.  Plaintiffs John Gabor and Kay Gabor, do hereby certify under penalty of perjury that the foregoing is of our personal knowledge, being true and correct and in compliance with FRCP 2008 Edition (West)..

Respectfully submitted,

DATED: June 5, 2008

_____
JOHN GABOR, plaintiff
590 Smokey Court
Campbell, CA 95008

DATED: June 5, 2008

_____
KAY GABOR, plaintiff
590 Smokey Court
Campbell, CA 95008

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing PLAINTIFFS REPLY IN OPPOS TO DEFENDANT SOLOMON. was served, pursuant to Federal Rules of Civil Procedure, Rule 5(a), upon all parties, *not in default*, listed below on this 5th day of June, 2008

/s/ _____
John Gabor, plaintiff

DEFENDANTS NOT IN DEFAULT

Claire T. Cormier for federal defendants
United States Attorney's Office
150 Almaden Blvd, Suite 900
San Jose, CA. 95113

Kay K. Yu for defendant Solomon
California Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA. 94102-3664